UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD TRUHN,
CAITLIN TRUHN,

    Plaintiffs,

v.

    Civil Action No. 18-12698

    HON. MARK. A. GOLDSMITH

EQUITYEXPERTS.ORG, LLC,
MICHAEL NOVAK,

    Defendants.
_____/

# OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Dkt. 27)

Plaintiffs Chad and Caitlin Truhn fell behind on their payments to their homeowners' association, Landsdowne Community Association (the "Association"). In their agreement with the Association, the Truhns agreed to pay the costs of collecting their fees, a task the Association outsourced to Defendant EquityExperts.org, LLC ("Equity Experts") in November 2017. Over the course of Equity Experts' involvement, the Truhns' debt grew from $577.42 in delinquent assessments in November 2017 to $2,269.31 in March 2018, when they paid $2,232.21 to settle their debt. 7/2/18 Statement, Ex. 7 to Mot. for Summ. J. at 19-20 (Dkt. 27-7).[1] The Truhns subsequently brought this case alleging that Equity Experts' collections practices violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. They now move for summary judgment (Dkt. 27). For the reasons discussed below, the motion is granted in part.

---

[1] Equity Experts waived a $100 fee, and the Truhns paid $1,215 for services Equity Experts rendered, $75 as the fee for an attorney Equity Experts retained, $62.90 in credit card fees, and $879.31 in assessments and late fees due to the Association. 7/2/18 Statement.

# I. BACKGROUND

By accepting title to their Virginia property, the Truhns agreed to pay the Association regular and special assessments, "together with such interest thereon and costs of collection thereof." Statement of Additional Material Facts ¶ 2 ("SAMF") (Dkt. 32) (quoting Decl. of Covenants, Conditions and Restrictions at 8, Ex. 1 to Resp. (Dkt 32-2)). "Costs of collection" include "interest, costs, and reasonable attorney fees." Id. These financial obligations became charges against the land and a continuing lien on the lot, as well as the personal obligation of the Truhns. Id. From the uncontested ledger, it appears the Truhns missed their July and October quarterly assessments; with late fees, the Truhns owed $577.42 as of October 31, 2017. See Association Ledger, Ex. 3 to Mot. (Dkt. 27-3). The Association retained Equity Experts in November 2017. SAMF ¶ 4.

Equity Experts sent a dunning letter to the Truhns on November 21, 2017. Ex. 2 to Mot. (Dkt. 27-2) ("November 21 Letter"). This letter said the Truhns owed $847.42, and it noted that the debt "may consist of regular association assessments, special assessments, interest, fees, fines and costs, which include amounts incurred by the Association to collect the debt." Id. The $847.42 included $577.42 for association dues and late fees and $270 for sending the November 21 Letter. Counterstatement of Material Facts ¶ 5 ("CMF"). The charges were not itemized in the November 21 Letter, and the parties dispute whether the letter's language describing what the debt "may consist of" was sufficient to inform the Truhns of the amount and character of the debt.

On January 31, 2018, Equity Experts sent another collection letter to the Truhns. Ex. 5 to Mot. (Dkt. 27-5) ("January 31 Letter"). The letter stated the following:

> In our previous letter, we advised you that if the debt was not paid within 15 days, a lien would be filed against your property and additional collection charges would be added to your debt. Unfortunately, we have not received full payment of the debt. Accordingly, this letter is your notice that a lien has been mailed for recording

against your property. A $395.00 collection fee, actual attorney's fees incurred to prepare the lien and actual filing fees have been charged to your association, who will add these charges to your balance.

Id. That letter also provided a list of the charges—separated into categories such as "assessment," "collection costs," and "attorney's fees"—and provides instructions "to make a payment or obtain a release of this lien." Id. Equity Experts never recorded a lien. CMF ¶ 16.

Equity Experts contends that Virginia law requires an attorney to execute a property lien, so it sent the draft lien and check for actual costs to attorney Tom Hodges in Virginia. Id. Equity Experts alleges that "[b]ecause Plaintiffs paid off their account in full, the lien was not filed to honor Plaintiffs' payment to satisfy the account." Id.; see also CMF ¶ 10. The Truhns deny this allegation and point to the fact that the lien had not been recorded by the time the Truhns paid their debt in full, one-and-a-half months after Equity Experts stated that it had mailed the lien to be recorded. Reply to Counter-Statement of Material Facts ¶ 10 ("RCMF"). The parties agree that Equity Experts never stated that a lien was recorded. SAMF ¶ 11. The Truhns contend that "the clear implication in those statements is that the lien would be recorded." Mot. at 18.

On February 16, 2018, Equity Experts sent another letter. Ex. 9 to Mot. (Dkt. 27-9) ("February 16 Letter"). It stated, among other things, the following:

> You were advised in a previous letter that a lien has been sent for recording against the property. A lien for unpaid association assessments remains until it is removed by a court, the debt is satisfied or the debt is paid in full. The law also permits the association to enforce its lien by foreclosure, if it chooses. Please note that the association has not started foreclosure proceedings at this time. That decision belongs only to your association and they may choose not to foreclose. If the association decides to enforce its lien at a future date, you will receive the notice that the law requires before that step is taken.

Id.

On March 14, 2018, the Truhns paid $2,232.21 to Equity Experts to settle their debt. See 7/2/18 Statement.

3

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Under the FDCPA, courts review a debt collector's representations under the "least sophisticated consumer standard," an objective test meant to ensure that the FDCPA protects all consumers. Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008).

## III. ANALYSIS

To prevail on a claim under the FDCPA, a plaintiff must show that (1) she is a "natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3); (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1962a(5); (3) the defendant is a "debt collector," within the meaning of 15 U.S.C. § 1692a(6); and (4) the defendant violated a provision of the FDCPA. Dunn-Mason v. JP Morgan Chase Bank, N.A., No. 11-13419, 2013 WL 5913684, at *11 (E.D. Mich. Nov. 1, 2013).

Although Equity Experts argues that the Truhns failed to file an affidavit supporting their position that their debt is a consumer debt and that Equity Experts is a debt collector, Resp. at 22, Equity Experts does not seriously deny that Truhn is a consumer, that the alleged debt is a "debt" as defined by the FDCPA, or that Equity Experts is a "debt collector" under the FDCPA.[2] The Truhns meet the threshold requirements of an FDCPA claim, and the only dispute for each claim under the FDCPA is whether Equity Experts violated a provision of the FDCPA.

1. **Violation of 15 U.S.C. § 1692e**

The FDCPA states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and provides a range of examples of prohibited conduct. 15 U.S.C. § 1692e. The Sixth Circuit has applied a materiality standard to § 1692 claims, which "simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 327 (6th Cir. 2012). The Truhns have alleged violations of § 1692e in three communications from Equity Experts, each of which will be addressed in turn.

---

[2] In its counterstatement of material facts, Equity Experts "denies that Plaintiffs' account is a 'debt' as defined by the Fair Debt Collection Practices Act because Defendant is without proof thereof." CMF ¶ 2. The supposed lack of proof is not a basis for Equity Experts to deny a fact. By signing Equity Experts' Response, counsel certified to the "best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [t]he denial of factual contentions [were] warranted on the evidence, or if specifically so identified, [were] reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). Based on the facts available to the Court, no reasonable inquiry could have led counsel to the conclusion that Plaintiffs' account was not a debt within the FDCPA. In numerous letters, Equity Experts wrote messages such as "**EQUITYEXPERTS.ORG, LLC IS A DEBT COLLECTOR. THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" November 21 Letter at 1. This language is required by the FDCPA, § 1692e(11), and Equity Experts does not explain why Equity Experts would use this language if not compelled by the FDCPA.

5

*The November 21 Letter*

The Truhns argue that the November 21 Letter misled them or concealed the true nature of the amount owed because it failed to itemize the debt or otherwise distinguish its collection fees—at that stage, $270—from the underlying charges. The letter states the following:

> Your unpaid balance is $847.42. This balance may consist of regular association assessments, special assessments, interest, fees, fines and costs, which include amounts incurred by the Association to collect the debt.

November 21 Letter at 1. The question is whether this language was false, deceptive, or misleading—given that $270 of the $847.42 was Equity Expert's fee for writing that very letter.

Equity Experts argues that the FDCPA does not require debt collectors to itemize their charges in their dunning letters. This position has some merit and support in the law. See Wilson v. Trott Law, P.C., 118 F. Supp. 3d 953, 963 (E.D. Mich. 2015) (noting that "there is no language in the FDCPA that requires a debt collector to provide a complete breakdown of the debt owed"). Furthermore, even the least sophisticated consumer could recognize from this letter the <u>possibility</u> that fees were included in the balance.

On the other hand, the Seventh Circuit has held that "it is misleading under the FDCPA to lump an attorneys' fees charge in with the principal debt as part of an account balance in a dunning letter." See Singer v. Pierce and Assocs. P.C., 383 F.3d 596, 598 (7th Cir. 2004) (citing Fields v. Wilber Law Firm, 383 F.3d 562, 598 (7th Cir. 2004)). Furthermore, Equity Experts introduced ambiguity by stating what the debt "may consist of" rather than what the debt actually consisted of. With that said, "'[a] rule against trickery differs from a command to use plain English and write at a sixth-grade level.'" Wilson, 118 F. Supp. 3d at 963 (quoting Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir. 2007)). Reasonable minds could disagree about whether Equity Experts' writing was a sharp practice or just sloppy prose.

Whether a debt collection letter is materially misleading is a question of fact. Id. at 962. Where the answer is not so plain as to allow the court to grant summary judgment or dismissal for one side or the other, the question is left to the jury. Id. at 964; see also McInerney v. Roosen Varchetti and Olivier PLLC, 17-10037, 2017 WL 4778724, at *5-6 (E.D. Mich. Oct. 23, 2017) (holding that there was a genuine question of material fact regarding whether a debt collector violated § 1692e(2)(A) by including unexplained costs); Thebert v. Potestivo & Associates, P.C., 16-14341, 2017 WL 3581322, at *8 (E.D. Mich. Aug. 18, 2017) (when considering a motion to dismiss, holding it "plausible that merely providing the 'total debt due and owing under the mortgage' would mislead or be unfair to the least sophisticated consumer" where the consumer requested an accounting). Therefore, summary judgment is denied on the alleged § 1692e violation for misrepresentation in the November 21 Letter.

*Misrepresentation in the January 31, 2018 Letter*

The Truhns also allege that subsequent collection letters contained incorrect and misleading information. They identify the January 31, 2018 Letter, which stated the following:

> [A] lien has been mailed for recording against your property. A $395.00 collection fee, actual attorney's fees incurred to prepare the lien and actual filing fees have been charged to your association, who will add these charges to your balance.

January 31 Letter at 1. Both sentences violate § 1692e.

By this language, Equity Experts falsely represented that it was actively in the process of recording a lien. When the least sophisticated consumer would interpret language to mean that legal action was authorized, likely, and imminent—and the legal action was not in fact authorized, likely, and imminent—the language violates the FDCPA. See, e.g., Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993).

The Truhns focus on imminence, pointing to the fact that a lien had still not been filed when they satisfied their debt on March 14, more than six weeks after Equity Experts stated that

7

the lien had been mailed. Six weeks is a far too long a delay. The least sophisticated consumer would more than likely have read the letter to mean that the lien had been mailed directly to the recording office. Even a consumer who somehow understood the letter had been mailed to an attorney so that the attorney would record it would not expect the delay in recording to last long. But while the letter implied imminence and urgency, Equity Experts' actions displayed nonchalance. This misrepresentation is material because it would tend to give the consumer the false impression that time was of the essence and that severe consequences could ensue without immediate action. This is precisely the sort of pressure tactic the FDCPA prohibits, even in connection to the collection of a legitimate debt.

The Truhns also allege a § 1692e violation in the next sentence of the January 31, 2018 Letter: "A $395.00 collection fee, actual attorney's fees incurred to prepare the lien and actual filing fees have been charged to your association, who will add these charges to your balance." January 31 Letter at 1. The Truhns allege that "Equity Experts' account statement shows no 'actual costs' for recording a lien against Plaintiff's real property," Statement of Material Facts ¶ 13 (Dkt. 27) ("SMF"), to which Equity Experts responds, "Defendant admits that there have been no out-of-pocket expenses associated with recording a lien against the Plaintiffs' property," CMF ¶ 13. The record is devoid of any accounting entry showing the payment of money to Tom Hodges other than the $75 attorney fee, which does not appear to have been refunded. See Exs. 4, 7, 9 to Mot. (Dkts 27-4, 27-7, 27-9).

In a declaration, Equity Experts Vice President and General Counsel Jacqueline Galofaro stated, "Equity Experts submission of monies to cover the actual costs of collection in recording a property lien were never claimed, and were refunded to the Association." Decl. of Jacqueline Galofaro ¶ 22, Ex. 2 to Resp. (Dkt. 32-3) ("Galofaro Decl."). With respect to the absence of these

charges from the accounting records, she stated that the charges are reflected in Equity Experts' business records rather than the Association's ledger. Galofaro Decl. ¶ 24. But whether Equity Experts sent money to Hodges to cover actual costs, or whether that money was returned, is irrelevant. What matters is that Equity Experts' statement—"actual filings fees have been charged to your association, who will add these charges to your balance"—was false or misleading within the meaning of the FDCPA.

Actual filing fees had not been charged and never were charged to the Association, because the lien was never recorded. The misrepresentation was material because the least sophisticated consumer would be led by this statement into believing that her debt was greater than it was, motivating quicker, higher, or costlier payments than the consumer would pay if presented with more accurate information.[3] Moreover, Equity Experts' representation that it had charged actual filing fees contributed to the misimpression that Equity Experts had already, or would imminently record its lien—a false impression corroborated by the statements that the lien had been mailed, that the Association was "obtaining this lien in accordance with" Virginia law, and that the Truhns could contact Equity Experts "to make a payment or obtain a release of this lien." January 31 Letter (emphasis added). The Truhns are entitled to summary judgment on these claims.

*Misrepresentations in the February 16 Letter*

The February 16 Letter further violates the FDCPA's prohibition on false or misleading representations. It states the following:

> You were advised in a previous letter that a lien has been sent for recording against the property. A lien for unpaid association assessments remains until it is removed by a court, the debt is satisfied or the debt is paid in full. The law also permits the

---

[3] It is immaterial that the amount the Truhns ultimately paid may not have been impacted by the misrepresentation. The least sophisticated consumer test is objective and measures how the reasonable and unsophisticated consumer would behave under the circumstances. The actual harm the Truhns experienced is a question of damages not addressed in this phase of the case.

> association to enforce its lien by foreclosure, if it chooses. Please note that the association has not started foreclosure proceedings at this time. That decision belongs only to your association and they may choose not to foreclose. If the association decides to enforce its lien at a future date, you will receive the notice that the law requires before that step is taken.

February 16 Letter at 1.

The least sophisticated consumer reading this letter would interpret the letter to say either that the lien would be recorded imminently, or, more likely, that the lien had already been recorded. The inclusion of charges for a $395 lien preparation fee and a $75 attorney fee further contributed to this misimpression. Thus, Equity Experts once again violated § 1692e, by representing that a lien either would imminently be recorded or had already been recorded when, in fact, neither was true.

The Truhns allege a further violation of § 1692(e), based on Equity Experts' statement that the $350 collection cost that it charged the Truhns had been "charged to the [A]ssociation," February 16 Letter at 1, despite the charge not appearing on Equity Experts' February 16 ledger with the Association. Resident Transaction Report, Ex. 8 to Mot. (Dkt. 27-8). However, in a case involving similar contracts, the Sixth Circuit held that Equity Experts may collect its fees directly from the consumer without violating the FDCPA. See Sparks v. EquityExperts.org, LLC, 936 F.3d 348, 351 (6th Cir. 2019). Thus, the $350 bill to the Truhns was the charge to the Association, although Equity Experts attempted to collect it from the Truhns before billing the Association. Unlike the ersatz filing fee for the never-recorded lien, the $350 charge appears to relate to a service Equity Experts rendered, and the $350 charge appears in the accounting. See 7/2/18 Statement. The Truhns received the $350 bill as one of the Association's costs, so Equity Experts' statement, even if technically untrue, was not a material misrepresentation. Summary judgment is denied on this claim.

**2. Violation of 15 U.S.C. § 1692f**

The Truhns allege a single violation of § 1692f, which prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). "The practice made illegal by this statute is the attempt to collect money that is not owed, because the consumer never agreed to the debt." Wilson, 118 F. Supp. 3d at 960.

The Truhns agreed to pay "such interest, costs, and reasonable attorneys fees" as constitute the costs of collecting their assessments. SAMF ¶ 2 (quoting Decl. of Covenants, conditions and Restrictions, Ex. 1 to Resp., at 8); RCMF ¶ 2. The question here is whether this agreement authorizes the $100 charge for drafting the release of the never-recorded lien.

Equity Experts alleges that the Association requested the bundled "lien preparation package," which includes the drafting of a lien release. Resp. at 19; Galofaro Decl. ¶ 15. The Truhns argue that "[i]t strains credulity to believe that the Association requested Equity Experts to prepare a lien release before the lien was even recorded, not knowing whether it would be recorded (which it was not) or would need to be released." Reply at 4. But questions of what strains credulity must be left to the jury, which can examine the evidence and determine whether the Association specifically requested a draft of the lien release under these circumstances.

The Truhns further argue that the "Association's decision to start the lien process does not mean that Equity Experts may charge fees for not-yet-performed (and never performed) services for that lien process." Pl. Suppl. Br. at 4 (Dkt. 35). Equity Experts disagrees, arguing, "[a]lthough Plaintiffs surmises [sic] that the services had not been 'performed' by Equity Experts, the right to recover such costs is not conditioned on when the costs are incurred, much less by whom." Resp.

at 18-19. Further, it argues, the agreement between the Association and the Truhns "does not limit recovery to 'reasonable costs' or 'actual costs.'" Resp. at 20.

In Sparks, the Sixth Circuit partially resolved this debate:

> [T]he use of the term 'costs' does fairly imply that the homeowner is obligated to pay only something akin to the actual costs of collection—and not any charge, unrelated to actual costs, that the Association decides to levy. Otherwise, the authorization of 'costs' would be meaningless and open to abuse.
>
> Courts have, along these lines, interpreted contracts that make a debtor responsible for 'all costs of collection' not to authorize percentage fees unmoored from the actual costs of collection. See Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 609-10 (11th Cir. 2014). In the same vein, courts have interpreted agreements awarding costs for 'services performed' and 'expenses incurred' to bar collection of fees for 'not-yet-performed' services and expenses. See Kaymark v. Bank of Am., N.A., 783 F.3d 168, 175-76 (3d Cir. 2015), abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP, --U.S.--, 139 S. Ct. 1029, 203 L.Ed.2d 390 (2019); see also Prescott v. Seterus, Inc., 635 F. App'x 640, 644 (11th Cir. 2015). In other words, courts have held that 'costs' means something like 'actual costs' for services performed.

Sparks, 936 F.3d at 352.

Thus, The Truhns are correct that Equity Experts may not charge for not-yet-performed services, and Equity Experts is incorrect that recovery may exceed actual costs. But the Truhns admit that "Equity Experts prepared the lien and release of lien," SAMF ¶ 8; RCMF ¶ 8, meaning Equity Experts rendered a service before issuing the associated charge. The Truhns claim these services were "associated with recording a lien and releasing the recorded lien, though no lien was ever recorded." Pl. Supp. Br. at 4. However, the fact that the services were associated with a never-performed task (recording) does not mean that the services themselves were not rendered or chargeable. Under Sparks, the Truhns' burden is to prove that the fees were not actual costs for services performed in the effort to collect the debt. They have not shown that they are entitled to a judgment as a matter of law on that claim; therefore, summary judgment is denied.

### 3. State Law Claims

Equity Experts does not contest that the alleged violations of Michigan law mirror the federal law violations. Rather, Equity Experts argues that the claims should be dismissed as meritless. Because Equity Experts has not filed a motion to dismiss or a motion for summary judgment, the request to dismiss the claims for which summary judgment is not granted to the Truhns is denied. The Truhns are granted summary judgment on the Mich. Comp. Laws § 339.915(e) claims paralleling the FDCPA claims for which they are granted summary judgment.

### 4. Bona fide error defense

Under the FDCPA, "a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Equity Experts raises a bona fide error defense, but it does not acknowledge any errors and stands firmly behind the practices determined in this Opinion to be unlawful. See, e.g., Galofaro Decl. ¶ 23. The bona fide error defense protects against liability for clerical and factual errors, not for legal errors. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 580-581 (2010). Therefore, Equity Experts cannot avail itself of the bona-fide error defense.

## IV. CONCLUSION

Summary judgment for the Truhns is granted on the Truhns' claims that Equity Experts violated 15 U.S.C. § 1692e and Mich. Comp. Laws § 339.915e by representing that it would imminently record a lien that it did not in fact record and by representing that charges for actual filing fees would be charged to the Association when they, in fact, would not be.

Summary judgment is denied with respect to the Truhns' claims that Equity Experts violated § 1692e by erroneously stating that a $350 fee would be charged to the Association, with respect to the § 1692f claim, and with respect to the state law claims paralleling those FDCPA claims.

The Court will convene a telephonic status conference for November 26, 2019 at 11 a.m.

SO ORDERED

Dated: November 20, 2019  s/Mark A. Goldsmith
     Detroit, Michigan  MARK A. GOLDSMITH
                                       United States District Judge